# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| X2Y Attenuators, LLC, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Case No. 1:17-cv-164-CB |
| v. | ) | |
| | ) | Judge Cathy Bissoon |
| Intel Corporation, | ) | |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |

## NOTICE OF SUPPLEMENTAL AUTHORITY

On September 21, 2017, the U.S. Court of Appeals for the Federal Circuit issued an order in *In re Cray Inc.*, No. 2017-129 (attached as Exhibit A), granting mandamus relief after finding that the U.S. District Court for the Eastern District of Texas abused its discretion in denying a motion to dismiss for improper venue.  The unanimous panel decision is the Federal Circuit's first opinion in over 30 years regarding the statutory provision at issue in Intel's pending motion to dismiss or transfer this case: *i.e.*, "Any civil action for patent infringement may be brought in the judicial district … where the defendant … has a regular and established place of business." 28 U.S.C. § 1400(b).

The Federal Circuit's decision emphasized the text of the statutory provision and reversed the lower court because its analysis was "not sufficiently tethered to [the] statutory language." *Cray*, slip op. at 10.  The Federal Circuit also cautioned that the patent venue statute is "a restrictive measure, limiting a prior, broader venue," *id.* at 9 (quoting *Stonite Prods. Co. v. Melvin Lloyd Co.*, 315 U.S. 561, 566 (1942)), and that courts should "be careful not to conflate showings that may be sufficient for other purposes, *e.g.*, personal jurisdiction or the general venue statute, with the necessary showing to establish proper venue in patent cases," *id.* at 9-10.

The court also announced "three general requirements" for whether a defendant has a regular and established place of business in the district: "(1) there must be a physical place in the district; (2) it must be a regular and established place of business; and (3) it must be the place of the defendant." *Id.* at 8.

Regarding the first element, the Federal Circuit stressed that "there must still be a physical, geographical location in the district from which the business of the defendant is carried out." *Id.* at 11. The court explicitly rejected the lower court's holding that "a fixed physical location in the district is not a prerequisite to proper venue." *Id.* Regarding the second element, the court clarified that "sporadic activity cannot create venue." *Id.* at 12. Regarding the third element, the Federal Circuit stressed that the regular and established place of business must be "the place *of the defendant*, not solely a place of the defendant's employee." *Id.* at 13. Rather, "the defendant must establish or ratify the place of business." *Id.* The Federal Circuit also noted that courts should consider "the nature and activity of the alleged place of business of the defendant in the district *in comparison with* that of other places of business of the defendant in other venues" because such a comparison "might reveal that the alleged place of business is not really a place of business at all." *Id.* at 14.

Dated: September 29, 2017

Respectfully submitted,

/s/ Robert D. Finkel
Robert D. Finkel, Esquire (Pa. I.D. #71130)
robert.finkel@bipc.com

BUCHANAN INGERSOLL & ROONEY PC
One Oxford Centre, 20th Floor
301 Grant Street
Pittsburgh, Pennsylvania 15219
Telephone: (412) 562-8800
Facsimile: (412) 562-1041

Attorneys for Defendant
Intel Corporation

OF COUNSEL:
William F. Lee (pro hac vice)
Michael J. Summersgill (pro hac vice)
Kate M. Saxton (pro hac vice)
WILMER CUTLER PICKERING HALE AND DORR LLP
60 State Street
Boston, Massachusetts 02109
Telephone: (617) 526-6000
Facsimile: (617) 526-5000

Todd C. Zubler (pro hac vice)
Nina S. Tallon (pro hac vice)
WILMER CUTLER PICKERING HALE AND DORR LLP
1875 Pennsylvania Avenue, N.W.
Washington, D.C. 20006
Telephone: (202) 663-6000
Facsimile: (202) 663-6363

# United States Court of Appeals
# for the Federal Circuit

---

**IN RE: CRAY INC.,**
*Petitioner*

---

2017-129

---

On Petition for Writ of Mandamus to the United States District Court for the Eastern District of Texas in No. 2:15-cv-01554-JRG, Judge J. Rodney Gilstrap.

---

**ON PETITION**

---

Before LOURIE, REYNA, and STOLL, *Circuit Judges.*

LOURIE, *Circuit Judge.*

### O R D E R

Cray Inc. ("Cray") petitions for a writ of mandamus vacating the order of the United States District Court for the Eastern District of Texas denying its motion to transfer the case to the United States District Court for the Western District of Wisconsin. *See Raytheon Co. v. Cray, Inc.*, No. 2:15-cv-01554-JRG, 2017 WL 2813896 (E.D. Tex. June 29, 2017) (*"Transfer Order"*). Raytheon Company ("Raytheon") opposes the petition. The district court misinterpreted the scope and effect of our precedent in determining that Cray maintained "a regular and established place of business" in the Eastern District of Texas within the meaning of 28 U.S.C. § 1400(b). Accordingly,

the court's decision refusing transfer pursuant to 28 U.S.C. § 1406(a) was an abuse of discretion. We therefore grant Cray's petition for a writ of mandamus and direct transfer of the case.

## BACKGROUND

This petition arises from a patent infringement action filed by Raytheon against Cray in the Eastern District of Texas. Cray sells advanced supercomputers that Raytheon accuses of infringement. Cray is a Washington corporation with its principal place of business located there. It also maintains facilities in Bloomington, Minnesota; Chippewa Falls, Wisconsin; Pleasanton and San Jose, California; and Austin and Houston, Texas.

Although Cray does not rent or own an office or any property in the Eastern District of Texas, it allowed Mr. Douglas Harless and Mr. Troy Testa to work remotely from their respective homes in that district. *Transfer Order*, 2017 WL 2813896, at *1–2 & n.1. Mr. Testa worked for Cray as a senior territory manager while residing in the district from 2010 to 2011 before the underlying suit was filed. *Id.* at *1 n.1

Mr. Harless worked as a "sales executive" for approximately seven years with associated sales of Cray systems in excess of $345 million. *Id.* at *1. Mr. Harless's responsibilities also included "new sales and new account development in [the] Central U.S." and "management of key accounts within the Financial, Biomedical and Petroleum Industries." *Id.* (alteration in original) (quotation marks omitted). Cray's "Americas Sales Territories" map, an internal document, identified Mr. Harless as a "Named Account Manager" and his location at his Eastern District of Texas personal home. *Id.* Mr. Harless received reimbursement for his cell phone usage for business purposes, internet fees, and mileage or "other costs" for business travel. *Id.* Cray provided Mr. Harless with "administrative support" from its Minnesota office. *Id.* He provided

IN RE: CRAY INC.                                                    3

"price quotations" to customers, listing himself as the "account executive" and the person who prepared the quotation. *Id.* at *6. The communications also identified his home telephone number as his "office" telephone number with an Eastern District of Texas area code. *Id.*

Mr. Harless, however, did not maintain Cray products at his home, nor did he maintain product literature at his home because it was available online. *Id.* at *9. It is undisputed that Cray never paid Mr. Harless for the use of his home to operate its business, or publicly advertised or otherwise indicated that his home residence was a Cray place of business.

Cray moved to transfer this suit under 28 U.S.C. § 1406(a), which provides that "[t]he district court of a district in which is filed a case laying venue in the wrong division or district shall dismiss, or if it be in the interest of justice, transfer such case to any district or division in which it could have been brought." Cray argued that it does not "reside" in the Eastern District of Texas in light of the Supreme Court's decision in *TC Heartland LLC v. Kraft Foods Group Brands LLC*, 137 S. Ct. 1514 (2017). The district court agreed that Cray does not reside in the district. *Transfer Order*, 2017 WL 2813896, at *4.

Cray further argued that venue was improper in the Eastern District of Texas because Cray had neither committed acts of infringement, nor maintained a regular and established place of business within that district. The district court, however, rejected that argument. The court found that Mr. Harless's activities were factually similar to the activities performed by the representatives in *In re Cordis Corp.*, 769 F.2d 733 (Fed. Cir. 1985), in which this court rejected a mandamus request to reverse an order denying transfer for improper venue. *See Transfer Order*, 2017 WL 2813896, at *8–10. The court did not rely on Mr. Testa's activities in determining that venue was proper.

4                                                    IN RE: CRAY INC.

Although the district court found that *Cordis* resolved this case, the district court then went on "[f]or the benefit of" other litigants and counsel to set out four factors for inquiries into what constitutes a regular and established places of business "in the modern era," including physical presence, defendant's representations, benefits received, and targeted interactions with the district. *Id.* at *11–14. The court, however, "decline[d] to expressly apply the factors . . . in this particular case; although, [it noted that it was] satisfied that had it done so, the result would remain the same." *Id.* at *14 n.13.

Cray petitions for a writ of mandamus directing reversal of the district court's denial of its motion to transfer venue and directing the district court to transfer this case to the Western District of Wisconsin pursuant to 28 U.S.C. § 1406(a).

DISCUSSION

I. The Mandamus Standard

We may issue a writ under the All Writs Act, 28 U.S.C. § 1651(a), as "'necessary or appropriate in aid of our jurisdiction." *Miss. Chem. Corp. v. Swift Agric. Chems. Corp.*, 717 F.2d 1374, 1379 (Fed. Cir. 1983) (quoting 28 U.S.C. § 1651(a)). Mandamus is reserved for exceptional circumstances. *Bankers Life & Cas. Co. v. Holland*, 346 U.S. 379, 382–83 (1953). A writ of mandamus "is appropriately issued, however, when there is 'usurpation of judicial power' or a clear abuse of discretion." *Schlagenhauf v. Holder*, 379 U.S. 104, 110 (1964) (quoting *Bankers Life*, 346 U.S. at 383).

A writ of mandamus may issue where: (1) the petitioner has "no other adequate means to attain the relief he desires"; (2) the petitioner shows "his right to mandamus is 'clear and indisputable'"; and (3) the issuing court is "satisfied that the writ is appropriate under the circumstances." *In re TC Heartland LLC*, 821 F.3d 1338,

IN RE: CRAY INC.                                                    5

1341 (Fed. Cir. 2016) (quoting *Cheney v. U.S. Dist. Court for the Dist. of Columbia*, 542 U.S. 367, 380–81 (2004)), *rev'd and remanded sub nom., on other grounds, TC Heartland LLC v. Kraft Foods Grp. Brands LLC*, 137 S. Ct. 1514 (2017). Similarly, mandamus may be appropriate, as it is here, to decide issues "important to 'proper judicial administration.'" *In re BP Lubricants USA Inc.*, 637 F.3d 1307, 1313 (Fed. Cir. 2011) (quoting *LaBuy v. Howes Leather Co.*, 352 U.S. 249, 259–60 (1957)). Additionally, the Supreme Court has approved the use of mandamus to decide a "basic [and] undecided" legal question when the trial court abused its discretion by applying incorrect law. *Schlagenhauf*, 379 U.S. at 110.

That is the circumstance here: the district court misunderstood the scope and effect of our decision in *Cordis*, and its misplaced reliance on that precedent led the court to deny the motion to transfer, which we find to have been an abuse of discretion.

As Cray points out, for nearly the last 30 years, venue in patent infringement cases has largely turned on whether a defendant "resides" in the district in question. Following the Supreme Court's recent decision in *TC Heartland*, litigants and courts are raising with increased frequency the question of where a defendant has a "regular and established place of business." *See, e.g., Transfer Order*, 2017 WL 2813896, at \*10 ("Since the Supreme Court's decision in *TC Heartland*, this Court has received a number of motions to dismiss or transfer based on improper venue."); *Regenlab USA LLC v. Estar Techs. Ltd.*, No. 16-CV-08771 (ALC), 2017 WL 3601304, at \*2 (S.D.N.Y. Aug. 17, 2017) ("In light of *TC Heartland*, the parties agree that venue is improper . . . under the first prong of § 1400(b) . . . . Therefore, the question presented today is whether discovery is necessary to determine that [either defendant] 'has a regular and established place of business' here.").

6                                                    IN RE: CRAY INC.

We have addressed that phrase only once in the context of a previous mandamus petition—in *Cordis*. *See* 769 F.2d at 736–37. *Cordis* found that "a rational and substantial argument may be made in support of the court's order denying Cordis' motion to dismiss for lack of proper venue." *Id.* at 737. It thus held in those circumstances that "we decline to issue the writ." *Id.* The court did state that the "appropriate inquiry" is not "whether [Cordis] has a fixed physical presence in the sense of a formal office or store." *Id.* But, notably, the court did not, in its opinion, evaluate venue in light of the statutory language of § 1400(b). The court simply determined that, under the facts presented, a writ was not justified.

We recognize that the world has changed since 1985 when the *Cordis* decision issued. In this new era, not all corporations operate under a brick-and-mortar model. Business can be conducted virtually. Employees increasingly telecommute. Products may not as a rule be warehoused by retailers, and the just-in-time delivery paradigm has eliminated the need for storing some inventory. But, notwithstanding these changes, in the wake of the Supreme Court's holding in *TC Heartland*, effectively reviving Section 1400(b) as the focus of venue in patent cases, we must focus on the full and unchanged language of the statute, as *Cordis* did not consider itself obliged to do.

Moreover, district courts, including the trial court in this case, have noted the uncertainty surrounding and the need for greater uniformity on this issue, *see, e.g.*, *Transfer Order*, 2017 WL 2813896, at *10 (explaining there is "uncertainty among the litigants regarding the scope of the phrase 'regular and established place of business'" and "the appropriate scope of such venue discovery"); *Regenlab*, 2017 WL 3601304, at *2 (S.D.N.Y. Aug. 17, 2017) ("Substantial confusion exists regarding the circumstances in which an entity will be found to have a 'regular and established place of business' in the dis-

IN RE: CRAY INC.                                                    7

trict."); *Johnston v. IVAC Corp.*, 681 F. Supp. 959, 962–63 (D. Mass. 1987) (collecting cases with a more "restrictive reading" of the statute and those with a more "'liberal' construction" (citation omitted)); *Brunswick Corp. v. Suzuki Motor Co.*, 575 F. Supp. 1412, 1424 n.5 (E.D. Wis. 1983) (noting that § 1400(b) "demonstrates . . . a need for nationwide uniformity" offered by the Federal Circuit), and this court "has a mandate to achieve uniformity in patent matters," *Panduit Corp. v. All States Plastic Mfg. Co.*, 744 F.2d 1564, 1574 (Fed. Cir. 1984). We conclude that mandamus here will further "supervisory or instructional goals" on an "unsettled and important" issue, an appropriate basis upon which to grant the mandamus petition. *In re Queen's Univ. at Kingston*, 820 F.3d 1287, 1291 (Fed. Cir. 2016) (quoting *In re Nintendo Co., Ltd.*, 544 F. App'x 934, 936 (Fed. Cir. 2013)); *see also BP Lubricants*, 637 F.3d at 1313. Although the law was unclear and the error understandable, the district court abused its discretion by applying an incorrect legal standard, which we now clarify in this opinion.

## II. The Meaning of the Venue Statute

Section 1400(b) provides that "[a]ny civil action for patent infringement may be brought in the judicial district where the defendant resides, or where the defendant has committed acts of infringement and has a regular and established place of business." On the issue of improper venue, the only question before the court is whether Cray has a "regular and established place of business" in the Eastern District of Texas within the meaning of § 1400(b). Because Cray is incorporated in the State of Washington, there is no dispute that the residency requirement of that statute cannot be met here under the definition provided in *TC Heartland*. *See* 137 S. Ct. at 1521. Nor does Cray challenge the district court's finding as to the acts of infringement within the district for purposes of venue.

8                                    IN RE: CRAY INC.

In matters unique to patent law, this court applies its own law. *Midwest Indus., Inc. v. Karavan Trailers, Inc.*, 175 F.3d 1356, 1359 (Fed. Cir. 1999) (*en banc* in relevant part), *cert. denied* 528 U.S. 1019 (1999). Section 1400(b) is unique to patent law, and "constitute[s] 'the exclusive provision controlling venue in patent infringement proceedings' . . . ." *TC Heartland*, 137 S. Ct. at 1518 (quoting *Stonite Prods. Co. v. Melvin Lloyd Co.*, 315 U.S. 561, 563 (1942)). Thus, Federal Circuit law, rather than regional circuit law, governs our analysis of what § 1400(b) requires.

As discussed in greater detail below, our analysis of the case law and statute reveal three general requirements relevant to the inquiry: (1) there must be a physical place in the district; (2) it must be a regular and established place of business; and (3) it must be the place of the defendant. If any statutory requirement is not satisfied, venue is improper under § 1400(b).

In the late 1800s, when § 1400(b)'s predecessor was being considered, courts had divided over whether a defendant could be sued for patent infringement outside the place of the defendant's incorporation. Some courts held that it was necessary to sue a defendant in its place of incorporation, and "the corporations thus have an opportunity to infringe upon patents and almost escape any responsibility for it by reason of the difficulty of finding them in order to sue them, for it is very inconvenient to travel across the continent to sue them when they are infringing in a business established near the plaintiff or owner of a patent." 29 Cong. Rec. 2719 (1897) (statement of Sen. Platt). Other courts instead held that an infringement "suit[] may be brought wherever service can be had." 29 Cong. Rec. 1900 (1897) (statement of Rep. Mitchell).

To resolve the uncertainty, Congress enacted § 1400(b)'s predecessor in 1897 to provide "jurisdiction"

IN RE: CRAY INC.                                                9

for patent infringement suits "in the district of which the
defendant is an inhabitant, or in any district in which the
defendant . . . shall have committed acts of infringement
and have a regular and established place of business." 29
Stat. 695, Ch. 395. The statute's "main purpose" was to
"give original jurisdiction to the court where a permanent
agency transacting the business is located." 29 Cong. Rec.
1900 (1897) (statement of Rep. Lacey). Jurisdiction would
not be conferred by "[i]solated cases of infringement" but
"only where a permanent agency is established." *Id.*

The statute of course allows broader venue than
merely the place of a defendant's incorporation, providing
"patent claimants an advantage" compared to claimants
in other federal-question cases at the time, *Brunette
Mach. Works, Ltd. v. Kockum Indus., Inc.*, 406 U.S. 706,
713 n.13 (1972); but the statute also clearly narrows
jurisdiction relative to the courts that previously allowed
patent suits wherever the defendant could be served, *see
id.* at 712–13. "Congress adopted the predecessor to
§ 1400(b) as a special venue statute in patent infringe-
ment actions to eliminate the 'abuses engendered' by
previous venue provisions allowing such suits to be
brought in any district in which the defendant could be
served." *Schnell v. Peter Eckrich & Sons, Inc.*, 365 U.S.
260, 262 (1961). The legislation was "intended to define
the exact limits of venue in patent infringement suits."
*Stonite*, 315 U.S. at 566. The Supreme Court therefore
has explained that it "was a restrictive measure, limiting
a prior, broader venue." *Id.* The Supreme Court has also
instructed that "[t]he requirement of venue is specific and
unambiguous; it is not one of those vague principles
which, in the interests of some overriding policy, is to be
given a liberal construction." *Schnell*, 365 U.S. at 264
(quoting *Olberding v. Ill. Cent. R. Co.*, 346 U.S. 338, 340
(1953)) (internal quotation marks omitted).

Courts should be mindful of this history in applying
the statute and be careful not to conflate showings that

10                                                          IN RE: CRAY INC.

may be sufficient for other purposes, *e.g.*, personal jurisdiction or the general venue statute, with the necessary showing to establish proper venue in patent cases. As the district court correctly stated, "the regular and established place of business standard requires more than the minimum contacts necessary for establishing personal jurisdiction or for satisfying the doing business standard of the general venue provision, 28 U.S.C. § 1391(c)." *Transfer Order*, 2017 WL 2813896, at *13 n.11 (internal quotation marks omitted); *see also Brunette*, 406 U.S. at 713 n.13 (contrasting the patent venue statute and the general venue statute and explaining "[s]ince 1948, the general venue law has authorized suit against a corporate defendant not only where he maintains a 'regular and established place of business,' as in s 1400(b), but also where he is 'doing business.'").

The statutory language we need to interpret is "where the defendant . . . has a regular and established place of business." 28 U.S.C. § 1400(b). The noun in this phrase is "place," and "regular" and "established" are adjectives modifying the noun "place." The following words, "of business," indicate the nature and purpose of the "place," and the preceding words, "the defendant," indicate that it must be that of the defendant. Thus, § 1400(b) requires that "a defendant has" a "place of business" that is "regular" and "established." All of these requirements must be present. The district court's four-factor test is not sufficiently tethered to this statutory language and thus it fails to inform each of the necessary requirements of the statute.

In deciding whether a defendant has a regular and established place of business in a district, no precise rule has been laid down and each case depends on its own facts. The "requirements" listed above and discussed below inform whether there exist the necessary elements, but do not supplant the statutory language. We stress

IN RE: CRAY INC.                                                    11

that the analysis must be closely tied to the language of the statute.

As noted above, when determining venue, the first requirement is that there "must be a physical place in the district." The district court erred as a matter of law in holding that "a fixed physical location in the district is not a prerequisite to proper venue." *Transfer Order*, WL 2813896, at *11. This interpretation impermissibly expands the statute. The statute requires a "place," *i.e.,* "[a] building or a part of a building set apart for any purpose" or "quarters of any kind" from which business is conducted. William Dwight Whitney, The Century Dictionary, 732 (Benjamin E. Smith, ed. 1911); *see also Place,* Black's Law Dictionary (1st ed. 1891) (defining place as a "locality, limited by boundaries"). The statute thus cannot be read to refer merely to a virtual space or to electronic communications from one person to another. But such "places" would seemingly be authorized under the district court's test.

While the "place" need not be a "fixed physical presence in the sense of a formal office or store," *Cordis,* 769 F.2d at 737, there must still be a physical, geographical location in the district from which the business of the defendant is carried out. In *Cordis,* for example, a defendant used its employees' homes to store its "literature, documents and products" and, in some instances, like distribution centers, storing inventory that the employees then directly took to its clients. 769 F.2d at 735. Defendant also engaged a secretarial service physically located in the district to perform certain tasks. *Id.*

The second requirement for determining venue is that the place "must be a regular and established place of business." The district court's test fails to recognize that the place of business must be "regular." A business may be "regular," for example, if it operates in a "steady[,] uniform[,] orderly[, and] methodical" manner, Whitney,

12                                    IN RE: CRAY INC.

*supra*, at 5050. In other words, sporadic activity cannot create venue. *See Phillips v. Baker*, 121 F.2d 752, 756 (9th Cir. 1941) ("A 'regular place of business' is, obviously, a place where such business is carried on 'regularly' and not merely temporarily, or for some special work or particular transaction." (quoting *Winterbottom v. Casey*, 283 F. 518, 521 (E.D. Mich. 1922))). Indeed, "[t]he doing of a single act pertaining to a particular business will not be considered engaging in or carrying on the business; yet a series of such acts would be so considered." *Regular*, Black's Law Dictionary (1st ed. 1891).

The "established" limitation bolsters this conclusion. The word contains the root "stable," indicating that the place of business is not transient. It directs that the place in question must be "settle[d] certainly, or fix[ed] permanently." *Establish*, Black's Law Dictionary (1st ed. 1891). To make "permanent" clearly accords with the "main purpose" identified in the predecessor statute's legislative history. *See* 29 Cong. Rec. 1900 (1987) (statement of Rep. Lacey). Indeed, court decisions have stressed the importance of sufficient permanence. *See, e.g.*, *Phillips*, 121 F.2 at 756 (explaining that where the defendant's "establishment [in the district] was just a location for a particular transaction," "the necessary element of permanency is lacking" (internal quotation marks omitted)). As an example, one court held that a business that semiannually displayed its products at a trade show in the district had only a temporary presence. *See Knapp-Monarch Co. v. Casco Prods. Corp.*, 342 F.2d 622, 625 (7th Cir. 1965). On the other hand, a five-year continuous presence in the district demonstrates that the business was established for purposes of venue. *See Remington Rand Bus. Serv. v. Acme Card Sys. Co.*, 71 F.2d 628, 629 (4th Cir. 1934).

Accordingly, while a business can certainly move its location, it must for a meaningful time period be stable, established. On the other hand, if an employee can move his or her home out of the district at his or her own insti-

IN RE: CRAY INC.                                                13

gation, without the approval of the defendant, that would
cut against the employee's home being considered a place
of business of the defendant.

Finally, the third requirement when determining
venue is that "the regular and established place of busi-
ness" must be "the place of the defendant." As the statute
indicates, it must be a place *of the defendant*, not solely a
place of the defendant's employee. Employees change
jobs. Thus, the defendant must establish or ratify the
place of business. It is not enough that the employee does
so on his or her own.

Relevant considerations include whether the defend-
ant owns or leases the place, or exercises other attributes
of possession or control over the place. One can also
recognize that a small business might operate from a
home; if that is a place of business of the defendant, that
can be a place of business satisfying the requirement of
the statute.

Another consideration might be whether the defend-
ant conditioned employment on an employee's continued
residence in the district or the storing of materials at a
place in the district so that they can be distributed or sold
from that place. *See, e.g., Cordis*, 769 F.2d at 375; *Am.
Cyanamid Co. v. Nopco Chem. Co.*, 388 F.2d 818, 820 (4th
Cir. 1968); *Grantham v. Challenge-Cook Bros., Inc.*, 420
F.2d 1182, 1185–86 (7th Cir. 1969); *Univ. of Ill. Found. v.
Channel Master Corp.*, 382 F.2d 514, 516 (7th Cir. 1967);
*Shelton v. Schwartz*, 131 F.2d 805, 808 (7th Cir. 1942).
Marketing or advertisements also may be relevant, but
only to the extent they indicate that the defendant itself
holds out a place for its business.

The district court is correct that a defendant's repre-
sentations that it has a place of business in the district
are relevant to the inquiry. Potentially relevant inquiries
include whether the defendant lists the alleged place of
business on a website, or in a telephone or other directory;

14                                    IN RE: CRAY INC.

or places its name on a sign associated with or on the building itself. *See, e.g., Cordis*, 769 F.2d at 375; *Grantham*, 420 F.2d at 1185–86. But the mere fact that a defendant has advertised that it has a place of business or has even set up an office is not sufficient; the defendant must actually engage in business from that location. In the final analysis, the court must identify a physical place, of business, of the defendant.

A further consideration for this requirement might be the nature and activity of the alleged place of business of the defendant in the district *in comparison with* that of other places of business of the defendant in other venues.* Such a comparison might reveal that the alleged place of business is not really a place of business at all.

III. Application of the Venue Statute to This Case

With the above discussion in mind, we turn to the facts of this case. The parties' primary dispute concerns whether Mr. Harless's home, located in the Eastern District of Texas, constitutes "a regular and established place of business" of Cray.

Cray points out that Mr. Harless's home was not listed in any business directories or websites, that he did not maintain product literature or products at his home, and that he was the only employee within the district. It argues that the online business materials and generalized

---

*     By this, we do not suggest that district courts must scrutinize the "nature and activity" of the alleged place of business to make relative value judgments on the different types of business activity conducted therein. Rather, a relative comparison of the nature and activity may reveal, for example, that a defendant has a business model whereby many employees' homes are used by the business as a place of business of the defendant.

IN RE: CRAY INC.                                                   15

administrative support are not evidence of a place of business of Cray in the Eastern District of Texas. Cray argues that its "Americas Sales Territories" map, identifying Mr. Harless's Eastern District of Texas location, does not indicate that Cray was doing business from that location because it merely was an internal presentation listing his address. Cray argues that it paid for no part of Mr. Harless's home or rent, and that it stored nothing there. Cray contends that Mr. Testa is irrelevant here because his employment ended well before Raytheon filed its complaint.

Raytheon responds that Cray made a "conscious decision" to hire Mr. Harless and Mr. Testa, knowing that they lived in the Eastern District of Texas. It notes that Cray paid at least Mr. Harless a salary and offered administrative support and reimbursed him for phone, internet, and business-related travel expenses. Raytheon also notes that Mr. Harless's social media profiles identified his location in the Eastern District of Texas as a Cray employee and that he corresponded with customers listing a phone number with an Eastern District of Texas area code. Raytheon argues that Cray did not need to store business materials with Mr. Harless or Mr. Testa because many were available online and that Cray's large products physically could not be stored there. Raytheon contends that Mr. Harless's activities extended beyond merely making sales and also contends that Cray did have customers in the Eastern District of Texas, even though Mr. Harless was not responsible for them.

The third requirement identified above, that the regular and established place of business must be "the place of the defendant," is crucial here. The facts presented cannot support a finding that Mr. Harless's home was a regular and established *place of business of Cray*. The same is true as to Mr. Testa, to the extent he is relevant to this analysis. The fact that Cray allowed its employees to work from the Eastern District of Texas is insufficient.

16                                          IN RE: CRAY INC.

There is no indication that Cray owns, leases, or rents any portion of Mr. Harless's home in the Eastern District of Texas.  No evidence indicates that Cray played a part in selecting the place's location, stored inventory or conducted demonstrations there, or conditioned Mr. Harless or Mr. Testa's employment or support on the maintenance of an Eastern District of Texas location.  No evidence shows that Cray believed a location within the Eastern District of Texas to be important to the business performed, or that it had any intention to maintain some place of business in that district in the event Mr. Harless or Mr. Testa decided to terminate their residences as a place where they conducted business.

Raytheon argues that a residential home office is "no less permanent than any conventional store or office," noting that often (as is the case here) the employee may have resided there before the employment began.  Respondent's Br. 22–23 n.6.  Raytheon has the wrong perspective.  For purposes of § 1400(b), it is of no moment that an employee may permanently reside at a place or intend to conduct his or her business from that place for present and future employers.  "The statute clearly requires that venue be laid where 'the defendant has a regular and established place of business,' not where the defendant's employee owns a home in which he carries on some of the work that he does for the defendant."  *Am. Cyanamid*, 388 F.2d at 820 (citations omitted).

Raytheon also argues that Cray customers were present in the district, but makes no suggestions that Mr. Harless or Mr. Testa served them.  Raytheon points to no evidence that the employees' location in the Eastern District of Texas was material to Cray.  Instead, it appears that Mr. Harless and Mr. Testa were "free to live where [they] chose as far as [the defendant] was concerned."  *Grantham*, 420 F.2d at 1185.

IN RE: CRAY INC.                                                              17

These facts are in contrast with those in *Cordis*, where it was clear that the place of business was established by Cordis. Cordis's business specifically depended on employees being physically present at places in the district, and it was undisputable that Cordis affirmatively acted to make permanent operations within that district to service its customers there. Cordis publicly advertised a secretarial service office located within the district as a place of business of its own and used its employees' homes like distribution centers.

Unlike in *Cordis*, where the appellant received secretarial services from a third-party located within the district, all expense reimbursements and administrative support for Cray's employees were provided from outside of the district. Further, the reimbursements and support were not conditioned on any particular employee location. Raytheon also argues that Cray's "Americas Sales Territories" map identifying Mr. Harless as a "Named Account Manager" and his location at his Eastern District of Texas personal home as further evidence that Cray had a "regular and established" place of business in the district. That map, however, was not advertised publicly and has little probative value.

Raytheon's remaining arguments are similarly unavailing. Mr. Harless's social media profiles and phone number indicate at most that he conducted business from the Eastern District of Texas, not that Cray established a place of business there. The availability of Cray's materials online is not compelling, as the materials were available in places where no one would argue that Cray established a regular place of business. And even if Mr. Harless performed work for Cray beyond sales, nothing suggests that Mr. Harless's work on "new sales and new account development" or "management of key accounts" changes the analysis above.

Our decision here comports with a number of appellate court decisions concerning employees working from their homes. In *Channel Master Corp.*, for instance, the Seventh Circuit addressed whether a defendant that employed a single salesman who used his home as a base for his sales activities in promoting his employer's products demonstrated that the defendant had a regular and established place of business there. 382 F.2d at 515. Like Raytheon, the plaintiff in that case argued that the employee "maintains control of a permanent establishment in the district for his employer, and systematically conducts a substantial portion of the employer's business in the district from this location." *Id.*

The Seventh Circuit rejected that argument. Like Mr. Harless, the salesman in *Channel Master* was reimbursed by the defendant for certain business expenses. But, also like Mr. Harless, he maintained in his home "no stock in trade, no displays, no samples, and no showroom." *Id.* at 516. He also "conducted no demonstrations of the products," received no business visitors, and had no staff or even secretarial help located in his home office. *Id.* Under these circumstances, the court concluded that the employee's home could not "by any stretch of the imagination" be characterized as a regular and established place of business of the defendant. *Id.*; *accord Grantham*, 420 F.2d at 1185–86.

Likewise, in *American Cyanamid*, the Fourth Circuit refused to accept the argument that "it is sufficient under § 1400(b) that there exists within the district a physical location where an employee of the defendant carries on a part of his work." 388 F.2d at 820. There, the defendant maintained no real or personal property, no storage, distribution or manufacturing facilities, and no bank account, address, or telephone listing in the district. And while one of its salaried regional sales managers maintained a portion of his home as an office, even having a part-time secretary assist him, the Fourth Circuit found

IN RE: CRAY INC.                                                     19

that insufficient, noting the fact that there was nothing outside of the home that indicated business was being conducted and that the defendant owned no interest in the house and failed to contribute to its maintenance. The fact that "the defendant's employee owns a home in which he carries on some of the work that he does for the defendant" was insufficient to establish venue. *Id.*

Similarly, the facts here do not show that Cray maintains a regular and established place of business in the Eastern District of Texas; they merely show that there exists within the district a physical location where an employee of the defendant carries on certain work for his employer.

We stress that no one fact is controlling. But taken together, the facts cannot support a finding that Cray established a place of business in the Eastern District of Texas. Thus venue cannot exist there under § 1400(b).

Because venue is lacking in the Eastern District of Texas, Cray seeks transfer to the Western District of Wisconsin. Raytheon responds that it prefers transfer to the United States District Court for the Western District of Texas. Section 1406(a) provides that "[t]he district court of a district in which is filed a case laying venue in the wrong division or district shall dismiss, or if it be in the interest of justice, transfer such case to any district or division in which it could have been brought."

Because the district court determined that venue was proper, it did not address the parties' arguments regarding where the case should be transferred. We leave that determination for the district court on remand.

Accordingly,

IT IS ORDERED THAT:

The petition is granted to the extent that the district court's order denying Cray's Rule 12(b)(3) motion is

20                                              IN RE: CRAY INC.

vacated, and the district court is directed to grant the
motion and transfer the case pursuant to § 1406(a) to an
appropriate venue to be determined by the district court
on remand.

FOR THE COURT

/s/ Peter R. Marksteiner
Peter R. Marksteiner
Clerk of Court